Michael J. Gleason SBN 279434
mgleason@hahnlaw.com
HAHN LOESER & PARKS, LLP
One America Plaza
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619.810.4300
Facsimile: 619.810.4301

Steven A. Goldfarb (admitted *pro hac vice*)
sagoldfarb@hahnlaw.com
HAHN LOESER & PARKS, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: 216.621.0150
Facsimile: 216.241.2824

[Additional Counsel Appear in Signature Block]

Attorneys for Defendants Fidelity National Financial,
Inc.; Fidelity National Home Warranty Company; Fidelity
National Title Insurance Company; Lawyers Title Company;
Chicago Title Company; Commonwealth Land Title Company;
and Ticor Title Company of California

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| PAUL PRESTON, on Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br><br>FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation, *et al*., Defendants. | Case No. CV11-09746 DSF (AGRx)<br><br>JUDGE DALE S. FISCHER<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER STAYING DISCOVERY PENDING RULINGS ON DEFENDANTS' DISPOSITIVE MOTIONS**<br><br>**Hearing Date:    June 4, 2012**<br>**Hearing Time:   1:30 p.m.** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ...............................................................................1

LAW AND ARGUMENT ....................................................................2

I.  DISCOVERY SHOULD BE STAYED PENDING RESOLUTION
    OF DEFENDANTS' DISPOSITIVE MOTIONS. ...........................................2

    A.  Defendants' Moving to Stay Discovery Is Not Precluded by Entry
        of the Court's Scheduling Order. ...........................................3

    B.  A Stay of Discovery Would Not Prejudice Preston. ...........................4

    C.  Preston's Arguments Regarding Burdensomeness Miss the Mark. ......4

    D.  Defendants Are Likely to Prevail on Their Dispositive Motions. ........6

    E.  Defendants Did Not Waive the Right to Seek a Discovery Stay. .........8

II. BECAUSE PRESTON LACKS STANDING, HE CANNOT AMEND
    HIS COMPLAINT, AND NO DISCOVERY FOR ANY PURPOSE
    MAY BE ALLOWED. ..................................................................9

CONCLUSION .................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Ameritel Inns v. Moffat Bros. Plastering, L.C.*,
    2007 WL 1792323 (D. Idaho June 20, 2007) ......................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................6

*Federal National Mortgage Ass'n v. Green Tree Serv., LLC*,
    2012 U.S. Dist. LEXIS 50585 (D. Nev. Apr. 11, 2012)......................................8

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
    192 F.R.D. 284 (S.D. Cal. 2000) ....................................................................5, 8

*Jarvis v. Regan*,
    833 F.2d 149, 155 (9th Cir. 1987) ....................................................................5

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) ........................................................................1, 5

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ........................................................................1, 2

*Seven Springs Ltd. P'Ship v. Fox Capital Mgmt. Corp.*,
    2007 WL 1146607 (E.D. Cal. April 18, 2007) ....................................................8

*Skellerup Industries, Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 (C.D. Cal. 1995)....................................................................2, 4

*Thomas v. Bible*,
    983 F.2d 152 (9th Cir. 1993) ............................................................................3

*United States v. Smith*,
    389 F.3d 944 (9th Cir. 2004) ............................................................................4

*United States v. Vigneau*,
    337 F.3d 62 (1st Cir. 2003)................................................................................4

*Wood v. McEwen,*

   644 F.2d 797 (9th Cir. 1981) ...................................................................8

STATUTES

CAL. INS. CODE § 12404 ..........................................................................8

Fed. R. Civ. P. 16(b)(4)...........................................................................4

Fed. R. Civ. P. 26(c)................................................................................2

**INTRODUCTION**

Preston is wrong about Ninth-Circuit precedent on discovery stays.  He also errs in describing the alleged prejudice that he would experience if discovery were stayed.  His alternative attempt to garner discovery before dismissal—by amending his complaint to add more plaintiffs—fails as a matter of law.  Thus, the Court should stay discovery pending resolution of Defendants' dispositive motions.

A stay of discovery pending a ruling on dispositive legal issues is not "disfavored," as Preston asserts, at least in the Ninth Circuit.  In *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987), the district court granted a motion to dismiss the plaintiff's claims without permitting discovery, even though plaintiff sought to amend the complaint.  Affirming, the Ninth Circuit explained "[i]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery."  *Id*.  Determining the legal sufficiency of the complaint first is sounder practice because, if the complaint proves to be legally defective, "our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility."  *Id*.; *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (staying discovery until issue of immunity was decided "furthers the goal of efficiency for the court and litigants").

So contrary to what Preston says, a discovery stay is the "sounder practice."  Because on the undisputed facts Preston lacks standing (as he implicitly concedes,

explained in part II below), Defendants followed the sounder practice in moving for a protective order.[1]

## LAW AND ARGUMENT

## I.   DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF DEFENDANTS' DISPOSITIVE MOTIONS.

Preston's Opposition does not contest some of the important factors that support good cause for a stay. He does not dispute that Defendants' motions for summary judgment and judgment on the pleadings, if granted, would be dispositive of all claims. He does not dispute that standing is a legal issue. He does not dispute that the Non-Home Warranty Defendants' Motion for Judgment on the Pleadings in particular is a facial challenge to the legal sufficiency of the complaint that assumes the pleaded facts to be true, so that no discovery can be necessary to respond to it. The purpose of a motion for judgment on the pleadings, like a motion to dismiss, is to "challenge the legal sufficiency of complaints without subjecting [defendants] to discovery." *Rutman Wine Co.*, 829 F.2d at 738. To

---

[1] Because the authority for this motion is Civil Rule 26(c), which speaks in terms of a "protective order," Defendants first filed this motion with the Magistrate Judge. Indeed, this Court's Standing Order, ¶ 4(b), directs "all discovery matters" and "all discovery disputes" to the Magistrate Judge. Paragraph 6 of that Order says "[p]roposed protective orders pertaining to discovery must be submitted to the assigned magistrate judge." Defendants meant to follow the rules, not to avoid this Court. In *Skellerup Industries, Ltd. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995), Preston's principal cited case, the City of Los Angeles similarly sought a protective order to stay *all discovery* pending resolution of a motion to dismiss. The motion to stay was decided *by the Magistrate Judge*.

On the merits of the motion to stay, *Skellerup* inexplicably does not acknowledge the controlling authority of *Rutman Wine Company.* To the extent that *Skellerup* imposes a "heavy burden" on the party seeking a stay, it is inconsistent with that Ninth-Circuit authority. At most, *Skellerup* supports the proposition that a motion to dismiss does not automatically stay discovery.

allow discovery to proceed against the Non-Home Warranty Defendants would defeat that purpose.

### A.   Defendants' Moving to Stay Discovery Is Not Precluded by Entry of the Court's Scheduling Order.

Preston first argues that Defendants' motion is inconsistent with the Court's decision at the case management conference not to bifurcate discovery.  It is not.  There was no motion to stay all discovery pending at that time.  A refusal to bifurcate discovery does not mean that discovery cannot later be stayed if good cause supports the stay.  In fact, the Court implied that merits discovery would not go forward immediately when it indicated that Preston will move for class certification and Defendants will move for summary judgment, "[s]o those two things in itself will affect some kind of bifurcation[.]"  (Preston Opposition 7.)  To stay discovery now does not "nullify" the Court's ruling; if Defendants' dispositive motions are not granted, discovery will resume on a non-bifurcated basis.[2]

Preston also argues that a discovery stay is barred by the "law of the case" doctrine.  (Preston Opposition 7 & n.5.)  But that doctrine provides that "one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Thomas v. Bible*, 983 F.2d

---

[2] Preston's Opposition refers several times to discovery disputes between the parties concerning the discovery that Preston has served.  Defendants objected to portions of Preston's discovery (but did so on multiple grounds, not only on the ground of lack of standing, as Preston Opposition 4-5 suggests).  Preston could have moved to compel, but did not.  Defendants did not "arrogate" a stay to themselves; they exercised their right to object to improper discovery.  Preston objected to some third-party depositions and refused to produce himself for deposition.  The substance of those disputes is not before the Court on this motion.  But the disputes themselves confirm that it is inefficient for the parties and the Court to be engaged in discovery when pending dispositive motions likely will end the case.

152, 154 (9th Cir. 1993).  It thus speaks only to "successive stages of a single case" that has been appealed.  *United States v. Vigneau*, 337 F.3d 62, 67 (1st Cir. 2003). It is therefore "wholly inapposite" to circumstances where "a district court seeks to reconsider an order over which it has not been divested of jurisdiction."  *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004).  "All rulings of a trial court are subject to revision at any time before the entry of judgment."  *Id*.  Indeed, discovery schedules may be modified "for good cause" and "with the judge's consent."  FED. R. CIV. P. 16(b)(4).  So nothing about the law of the case doctrine bears out Preston's arguments here.

### B.     A Stay of Discovery Would Not Prejudice Preston.

Preston next argues that a stay will prejudice his ability to meet the current schedule for class certification.  Balancing harm and benefits is not one of the primary factors for good cause that is spelled out even in Preston's own cited case *Skellerup*.  In any event, at the case management conference the Court gave Preston 120 days to move for class certification, rather than roughly the year that Preston had requested, precisely because the Court was not persuaded that much class certification discovery is necessary.

In a meet-and-confer on May 11, 2012, Defendants' counsel offered not to oppose Preston's request for an additional 120 days to file his class-certification brief if the dispositive motions are denied.  [Declaration of Derek E. Diaz ("Diaz Decl.") at ¶ 3.]  Preston's counsel flatly rejected the offer.  [*See id*.] That intransigence aside, additional time to move for class certification would completely obviate any alleged prejudice to Preston.

### C.     Preston's Arguments Regarding Burdensomeness Miss the Mark.

Preston next argues that Defendants have not shown that Preston's discovery would be unduly burdensome.  But burdensomeness is not the primary gauge

1  for good cause *in the context of pending dispositive motions*.  When dispositive

2  motions are pending, *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987), *GTE*

3  *Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 289 (S.D. Cal. 2000), and other

4  cases cited in Defendants' Memorandum establish that good cause is shown when

5  the anticipated discovery would not respond to those motions because, for instance,

6  the motions concern questions of law.  *See also Little*, 863 F.2d at 685 ("discovery

7  could not have affected the immunity decision").  That courts sometimes allow

8  discovery "for reasons other than the need to oppose a motion to dismiss" (Preston

9  Opposition 12) does not negate a defendant's showing of good cause when the

10  plaintiff's discovery ranges beyond the issues in the dispositive motions.

11       Preston does not show that the discovery he seeks, supposedly to oppose

12  the dispositive motions, would establish his standing.  [*See* Bottini Decl. ¶ 12.]

13  Rather, his discovery requests focus on services that Defendants provided to him,

14  which he should know better than anyone.  [Pl's Second Set of Interrogatories,

15  Diaz Decl. at ¶ 4.]  When Preston says he "does intend to propound *additional*

16  discovery addressed to Defendants' recently-filed motions," (Preston Opposition

17  12, emphasis added), he tacitly admits that his previously-served discovery does

18  not respond to Defendants' motions.

19       With respect to burdensomeness itself, the discovery that Preston describes

20  (Preston Opposition 10) is unduly burdensome on its face.  He depicts the scope

21  of his discovery as "huge in temporal scope" because he alleged a large class

22  period, and "huge" in breadth because he chose to allege a nationwide class.

23  That sweeping scope of discovery is a consequence of Preston's own pleading

24  choices, and he cannot credibly deny that responding to it would be burdensome.

25  His proposed discovery plan identifies seven witnesses to depose aside from

26  himself, plus "various current and former employees of Defendants" which, given

27  the number of defendants, likely will be a large number.  [Bottini Decl. Ex. A-14.]

28

1    Preston complains that Defendants did not submit declarations to show

2  burden, but his cited cases involve boilerplate objections of burdensomeness to

3  individual discovery requests, not motions to stay discovery as a whole pending

4  decision on dispositive motions.  Those cases do not require that parties submit

5  declarations to state the obvious, particularly in a purported nationwide class action

6  involving seven different corporate entities.  The massiveness of that sort of

7  discovery is "obvious enough[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559,

8  127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929, 942 (2007).  Courts should strive "to

9  avoid the potentially enormous expense of discovery in cases with no reasonably

10  founded hope that the [discovery] process will reveal relevant evidence to support

11  [the plaintiff's claims]."  *Id.*

12         **D.      Defendants Are Likely to Prevail on Their Dispositive Motions.**

13    Preston also argues that Defendants are not likely to prevail on their

14  dispositive motions.  But as explained below, Preston implicitly concedes that

15  he lacks standing, which means that Defendants are likely to prevail.  In addition,

16  all the documents from Preston's transaction confirm that he was not charged and

17  did not pay for the home-warranty contract.  [*See* Doc. No. 58-1 at 6 & SUF ¶ 6.]

18  Also, under California law, once escrow conditions are fully satisfied, the real

19  property is transferred to the buyer and the money that the buyer paid becomes the

20  seller's property.  [*See* MSJ, Doc. No. 58-1 at 12-13.]  In any event, the parties do

21  not dispute the underlying facts, only the legal ramifications of those facts.  Thus,

22  Preston's claim to have paid every charge in his transaction presents a legal, not

23  factual, question.

24    Preston's references to the deposition of Ryan Lenocker (Preston Opposition

25  12-13) are all beside the point.  Who selected Fidelity National Home Warranty

26  Company to provide a home-warranty contract; whether the seller Maria

27

28

Tomassini was a nominal seller for her investment company; and whether Ms. Tomassini personally received the sale proceeds, have nothing to do with whether Preston was charged for and paid for the home warranty.

Preston tries to rescue his standing by framing a hypothetical question about whether he could have gotten "a cash credit in lieu of a home protection contract." (Preston Opposition 13.)  Preston claims:  "Lenocker admitted at his deposition that the seller would have been willing to provide Plaintiff a cash credit in escrow in lieu of a home protection contract.  *Id*. at pp. 126-27."  But that misrepresents the testimony.  Mr. Bottini asked only whether Preston, if he asked, could have gotten a cash credit, and did he ask her (Tomassini); Mr. Lenocker said "No."[3]  In any event, this speculative hypothetical proves nothing because what *actually occurred*, and what Mr. Lenocker *unequivocally affirmed*, is that Ms. Tomassini "paid $360 out of her proceeds" to purchase the contract.  [Lenocker Dep. 139:12-20, Diaz Decl. at ¶ 5.][4]

---

[3] Mr. Bottini's question and Mr. Lenocker's answer were as follows:

Q.  Now, what if Mr. Preston had come to you, through his agent, and said, "We don't want the home warranty plan.  We want $360.  Give us a credit for $360 home warranty plan from Fidelity."  Did she?

A.  No.  And according to the HUD, it looked like there were other disbursements paid to other vendors that HOC owed as well.  Construction company and, you know, First -- what is that?  First American's national -- natural hazard report fee as well was paid out.  Septic certification to Roto-Rooter plumbers.

Bottini Decl. Ex. F66-67 (deposition pages 126-127).

[4] Preston claims that Lenocker admitted that Defendants had a "pattern and practice" of "giving things of value to his real estate firms[.]"  (Preston Opposition 13.)  But Lenocker testified only about one golf outing in 2004 that Fidelity National Title Insurance Company helped sponsor, and one Christmas party in 2006 or 2007 at which a Fidelity representative donated an item for raffle.  [Lenocker Dep. 65:2-12; 78:23-79:13, Diaz Decl. at ¶ 5.]  More importantly, both events occurred *before* the 2009 passage of SB133 , which banned certain

Also, Defendants need not prove by "clear and convincing evidence" that the dispositive motions will be granted.  (Preston Opposition 12.)  The likelihood of success is not an evidentiary standard:  *Wood v. McEwen,* 644 F.2d 797 (9th Cir. 1981), did not purport to set an evidentiary burden for the moving party, and *Seven Springs Ltd. P'Ship v. Fox Capital Mgmt. Corp.*, 2007 WL 1146607 (E.D. Cal. April 18, 2007), at the end of the opinion, clarified that it meant a "clear and convincing showing."  But given that the "sounder practice" is to decide dispositive legal issues before discovery, it is more consistent with that practice to require that "the dispositive motion need only have a clear possibility of success when deciding to grant a stay of discovery."  *GTE Wireless*, 192 F.R.D. at 287; *accord Federal National Mortgage Ass'n v. Green Tree Serv., LLC*, 2012 U.S. Dist. LEXIS 50585 (D. Nev. Apr. 11, 2012) (good cause exists for stay where motion to remand to state court "has some merit and that there is a possibility that it will be granted") (no Westlaw version available); *Ameritel Inns v. Moffat Bros. Plastering, L.C.*, 2007 WL 1792323, at *4 (D. Idaho June 20, 2007) (stay justified because motion to dismiss "does not appear to be without some degree of foundation in law and there is a possibility that Defendant may prevail").

**E.      Defendants Did Not Waive the Right to Seek a Discovery Stay.**

Finally, Preston's argument that Defendants waived any opportunity to seek a stay is wrong.  Defendants' opening Memorandum explained that a motion for a protective order to stay discovery was necessary because there is an immediate legal issue that is dispositive of the case and the Court's jurisdiction, Preston's standing; that issue has been put before the Court in the dispositive motions; and Preston's discovery demands sweep far beyond his standing.  It makes no sense

---

types of marketing activities in the title insurance industry.  *See* CAL. INS. CODE § 12404.  Preston misleadingly omits that crucial fact.

1   for the parties to engage in complex and costly discovery, or for the Court to have
2   to resolve discovery disputes, while the dispositive legal issue is pending.[5]

3          To the extent that Preston's discovery has addressed standing, however,
4   Defendants have responded to it.  The Memorandum noted, in footnote 2, that
5   discovery could go forward if was necessary for Preston to respond to the
6   dispositive motions.  Defendants' "substantively responding, in part, to Plaintiff's
7   discovery requests" (Preston Opposition 14) is not inconsistent with this motion.

8          With respect to Preston's deposition, Defendants sought to depose Preston
9   to confirm the facts showing that he lacks standing.  Defendants explained that
10  to Preston's counsel, saying Defendants "will agree to confine Mr. Preston's
11  deposition to standing issues."  (Bottini Decl. Ex. G-81.)  Preston's limited
12  deposition therefore is not inconsistent with this motion.  If anything cries
13  out as an inconsistency, it is Preston's refusal to appear for a deposition
14  while simultaneously objecting to a stay of discovery.

15  **II.    BECAUSE PRESTON LACKS STANDING, HE CANNOT AMEND**
16  **        HIS COMPLAINT, AND NO DISCOVERY FOR ANY PURPOSE**
        **        MAY BE ALLOWED.**

17         Preston's Opposition does not dispute any of the settled law, set forth in
18  Defendants' Memorandum, establishing that when a plaintiff lacks standing from
19  the outset of the case, he has no standing to seek leave to amend the complaint,
20  and no discovery can be proper, because the court lacks subject-matter jurisdiction.
21  When the plaintiff lacks standing from the outset, the case must be dismissed.

---

[5] At the time Defendants wrote that the Court "directed the parties to go forward
23  with discovery" (Preston Opposition 14), the dispositive motions were not
    pending.  Defendants acknowledged that the Court, at the case management
24  conference, had not agreed to bifurcate discovery.  But that acknowledgment
25  did not mean that Defendants could not later move for a protective order based
26  on new dispositive motions.  Preston's position apparently is that once discovery
    has begun, no party later can seek to stay it based on new developments.  That is
27  not the law.

28

1    Instead, Preston asserts that "Defendants are aware that an amended

2    complaint and/or additional complaint with *new named plaintiffs* . . . will be filed

3    shortly and will moot any purported standing issues[.]"  (Preston Opposition 11

4    (emphasis added)).  Preston thereby concedes, implicitly, that he lacks standing,

5    because otherwise there would be no need to try to substitute *new named plaintiffs*.

6    But aside from his concession, an amended complaint cannot "moot" anything here

7    because, as shown in Defendants' Memorandum, a plaintiff who lacks standing has

8    no standing to seek leave to file an amended complaint, and the court has no power

9    to grant that leave.  And no discovery could be "utilize[d]" in a future amended

10   complaint because there can be no amended complaint when the court lacks

11   subject-matter jurisdiction.  Preston presents no contrary authority.

12   Moreover, in response to the indisputable evidence that Tomassini, the

13   seller, was "charged" for and "purchased" the home warranty contract (which is

14   the only settlement service Preston alleges he "purchased" from any of the

15   defendants), Preston's standing argument is reduced to a frivolous legal argument

16   that he "purchased" the home warranty contract because he purchased the house

17   and the purchase money for the house became the seller's proceeds that the seller

18   then used to "purchase" the home warranty contract.[6]  This is nonsense.  When the

19   escrow closed, the seller's proceeds became Tomassini's money, and she paid for

20   the home warranty contract when escrow paid the sellers charges as shown on the

21

22   _____

23   [6] Preston Opposition 13 ("Plaintiff also disputes the fact that Plaintiff did not pay
     for the real estate settlement service.  Plaintiff deposited all the money into escrow
24   and requested the home protection contract be provided as part of escrow.  *See id.*
     at pp. 128-30.  Lenocker admitted at his deposition that the seller would have been
25   willing to provide Plaintiff a cash credit in escrow in lieu of a home protection
     contract.  *Id*. at pp. 126-27.  Under these circumstances, Plaintiff believes he will
26   prevail on Defendants' MJOP and MSJ since Plaintiff provided the funds used to
     purchase the home protection contract.").  As explained above (note 3), Lenocker's
27   asserted admission is not true and irrelevant.

28

HUD-1 statement.  The residential property became Preston's property.  Preston did not pay for the home warranty contract any more than he paid for Tomassini's realtor's commission, her portion of title or recording fees, prorated taxes, or any other charge to the seller.  Sooner or later, it will be determined that Preston lacks standing and this Court lacks subject-matter jurisdiction.

## CONCLUSION

This lawsuit is predicated on the lie that Preston "purchased" or was charged for a home warranty contract.  Because that did not happen, *as a matter of fact*, Preston has no standing, and this Court is without subject-matter jurisdiction.  For the reasons set forth above and in Defendants' initial Memorandum, the Court should enter an order staying discovery until the Court rules on FNHW's Motion for Summary Judgment and the Non-Home Warranty Defendants' Motion for Judgment on the Pleadings.

Date: May 21, 2012                    RESPECTFULLY SUBMITTED,

     */s/ Michael J. Gleason*
Michael J. Gleason SBN 279434
*mgleason@hahnlaw.com*
HAHN LOESER & PARKS, LLP
One American Plaza
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619.810.4300
Facsimile: 619.810.4301

Steven A. Goldfarb (admitted *pro hac vice*)
*sagoldfarb@hahnlaw.com*
Derek E. Diaz (admitted *pro hac vice*)
*ddiaz@hahnlaw.com*
HAHN LOESER & PARKS, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: 216.621.0150
Facsimile: 216.241.2824

Mark E. Schiffman, SBN 62654
*Mark.Schiffman@fnf.com*
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619.810.4300
Facsimile: 619.810.4301

James A. Moss, SBN 84441
*James.Moss@fnf.com*
FIDELITY NATIONAL LAW
GROUP
915 Wilshire Boulevard, Suite 2100
Los Angeles, California 90017
Telephone: (213)438-4418
Facsimile: (213) 438-4417

Attorneys for Defendants
Fidelity National Financial, Inc.; Fidelity
National Home Warranty Company;
Fidelity National Title Insurance Company;
Lawyers Title Company; Commonwealth
Land Title Company; Ticor Title Company
of California; and Chicago Title Company

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on May 21,  2012, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notice of the

4

filing to:

5

6        Edward D. Chapin, Esq.
         Francis A. Bottini, Esq.
         Jill M. Sullivan, Esq.

7        Jennifer M. Chapman, Esq.
         CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP

8        550 West "C" Street, Suite 2000
         San Diego, California 92101

9        Telephone: 619.241.4810
         Facsimile: 619.955.5318

10

11       Blair A. Nicholas, Esq.
         Benjamin Galdston, Esq.

12       David Kaplan, Esq.
         Laurence Reza Wrathall, Esq.

13       BERNSTEIN, LITOWITZ, BERGER & GROSSMAN LLP

14       12481 High Bluff Drive, Suite 300
         San Diego, California 92130

15       Telephone: 858.793.0070
         Facsimile: 858.793.0323

16

17       Attorneys for Plaintiff and the Putative Classes

18       Date: May 21, 2012              _/s/ Michael J. Gleason_
                                          Michael J. Gleason,
19                                        Attorney for Defendants

20

21

22

23

24

25

26

27

28