Michael J. Gleason SBN 279434
*mgleason@hahnlaw.com*
HAHN LOESER & PARKS, LLP
One America Plaza
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 216.810.4300
Facsimile: 619.810.4301

Steven A. Goldfarb (admitted *pro hac vice*)
*sagoldfarb@hahnlaw.com*
HAHN LOESER & PARKS, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: 216.621.0150
Facsimile: 216.241.2824

Attorneys for Defendants Fidelity National Financial, Inc.; Fidelity National Home Warranty Company; Fidelity National Title Insurance Company; Lawyers Title Company; Chicago Title Company; Commonwealth Land Title Company; and Ticor Title Company of California

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| PAUL PRESTON, on Behalf of Himself and All Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation, *et al.*<br>　　　　Defendants. | Case No. CV11-09746 DSF (AGRx)<br><br>JUDGE DALE S. FISCHER<br><br>**REPLY IN SUPPORT OF FIDELITY NATIONAL HOME WARRANTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date: June 18, 2012**<br>**Hearing Time: 1:30 p.m.** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

PROLOGUE ........................................................................................................... 1

INTRODUCTION .................................................................................................. 1

LAW AND ARGUMENT ...................................................................................... 4

    I.    PRESTON'S EVIDENCE FAILS TO ESTABLISH ARTICLE III OR STATUTORY STANDING. ........................................................ 4

        A.    Hard Evidence and Black-Letter Law Conclusively Refute Preston's Claims About When Payment for the HWC Was Sent. ................................................................................ 4

        B.    Preston's After-the-Fact Mental Professions Cannot Create an Actionable Injury for Purposes of Standing. ....................... 7

        C.    No Genuine Disputes of Material Fact Exist About Whether Tomassini Paid for the Home-Warranty Contract. .... 8

    II.    PRESTON CANNOT CHANGE LEGAL REALITY BASED ON HIS THEORY OF "ECONOMIC REALITY." ........................... 9

    III.    *EDWARDS* DOES NOT CREATE STANDING FOR PRESTON. . 11

    IV.    PRESTON'S UCL CLAIMS ALSO FAIL FOR LACK OF STANDING, AS DO HIS CLAIMS FOR THE REMEDIES OF INJUNCTIVE AND DECLARATORY RELIEF. .................... 12

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**     **PAGE(S)**

*Andover Land Co. v. Hoffman*,
 264 Cal. App. 2d 87 (1968) ..................................................................................5

*Barbosa v. Target Mortgage Corp.*,
 968 F. Supp. 1548 (S.D. Fla. 1997) ......................................................................9

*Blaylock v. First Am. Title Ins. Co.*,
 No. C06-1667, 2008 WL 8741396 (W.D. Wash. Nov. 7, 2008)........................11

*Bradford v. WR Starkey Mortgage, LLP*,
 No. 2:06-cv-86, 2008 WL 4501950 (N.D. Ga. Feb. 22, 2008) .....................9, 10

*Carias v. Lenox Fin. Mortgage Corp.*,
 No. 07-83 SC, 2008 WL 397339 (N.D. Cal. Feb. 8, 2008)...........................9, 10

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .....................................7

*Colyer v. Smith*,
 50 F. Supp. 2d 966 (C.D. Cal. 1999) ..................................................................12

*Edwards v. First American Corporation*,
 610 F.3d 514 (9th Cir. 2010) .........................................................................3, 11

*Hagge v. Drew*,
 27 Cal. 3d 368 (1945) ..........................................................................................5

*Hangarter v. Provident Life & Accident Ins. Co.*,
 373 F.3d 998 (9th Cir. 2004) .........................................................................4, 12

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (Cal. 2009)................................................................................12

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)...........................................................................................12

*McWhorter v. Ford Consumer Fin. Co., Inc.*,
 33 F. Supp. 2d 1059 (N.D. Ga. 1997) ..................................................................9

*Roddenberry v. Roddenberry*,
    44 Cal. App. 4th 634 (1996) ...................................................................... 1, 2, 12

*Sch. Dist. No. 1J v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) .................................................................................. 7

*Stanford v. Home Depot USA, Inc.*,
    358 Fed. Appx. 816 (9th Cir. 2009) ................................................................... 12

*Sullivan v. Dollar Tree Stores, Inc.*,
    623 F.3d 770 (9th Cir. 2010) ................................................................................ 5

*Warth v. Seldin*,
    422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1973) ....................................... 4

### STATUTES & OTHER AUTHORITIES

10 Cal. Jur. *Escrows* § 1 ........................................................................................... 5

12 U.S.C. § 2607(d) .................................................................................................. 11

Fed. R. Civ. P. 56(c) .................................................................................................. 6

C.D. Cal. L.R. 7-7 ..................................................................................................... 6

## PROLOGUE

Whatever the nature of the evidence, truth is an ascendant value in litigation. Not every bald assertion rises to the dignity of substantial evidence. Transparent prevarication is not an acceptable basis for decision. In an appropriate context such evidence may even be rejected summarily without trial. In every context, the courts must be diligent not to base an award on testimony tailored by financial expediency rather than by truth.

*Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 654 (1996).

## INTRODUCTION

A plaintiff must establish Article III standing to sue in the Federal Courts. Standing requires an injury to Paul Preston, caused by Defendant Fidelity National Home Warranty Company ("FNHW"), that is capable of legal or equitable redress. To establish standing, Preston alleged that he "*purchased* …a home protection contract issued by [FNHW.]"  [Complaint ¶ 13 (emphasis added).]  But that is not true.  The seller, Maria Tomassini, was charged and paid for the home-warranty contract ("HWC").  [SUF ¶ 3]  The truth is Preston did not purchase any settlement service from FNHW (or any defendant for that matter).  And regardless whether the defendants paid "kickbacks" (they did not), Preston himself was not injured. He intentionally structured his transaction so that the seller would be charged.

Faced with the task of proffering evidence supporting his initial "bald assertion," Preston fails miserably, testing *Roddenberry's* jurisprudential teachings by obfuscating his false allegation of standing with "transparent prevarications" of law and knowingly false statements of "undisputed fact."   Preston's arguments are

"tailored by financial expediency rather than by truth." *Roddenberry*, 44 Cal. App. 4th at 654.  Each should be "rejected summarily without trial."  *Id*.

First, Preston argues he has Article III standing based on the fiction that he paid for the HWC, because the only funds in escrow were deposited by his lender and him.  And supposedly *before* the close of escrow on March 31, 2011, the escrow officer paid for the HWC per Preston's instructions.  According to a real estate broker, title to the sales proceeds does not transfer to the seller until the deed is recorded.  Thus, Preston proclaims that he must have paid for the HWC.

But there is no admissible evidence to support that view.  Preston's own declaration says that the escrow officer paid for the HWC *at* close of escrow, not *before*.  Under California law, title to sales proceeds transfers when the conditions of escrow are met–*at* close of escrow–because an escrow cannot close until all conditions are met.  *At* close of escrow, the funds of Preston and his lender became property of the seller, and the residence property of Preston.  In accordance with the purchase agreement, the HWC was paid at closing from *seller's* proceeds.

Also, Preston says he paid for the HWC because it was his understanding the HWC was to be paid from his and his lender's funds.  This is confirmed, he says, because he could have structured the contract differently so that he actually paid for the HWC.  But his "understanding" is contradicted by his accepted offer, which required the seller to obtain and pay for the HWC.  It does not matter how

FNHW'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
2

4697598

the transaction *could* have been structured, only how it *was* structured. The undisputed facts are that Preston was the master of his offer, and he required the seller to pay using the seller's proceeds at closing.

Second, Preston correctly recognizes that, to have Article III standing for a suit based on an alleged violation of a statute such as RESPA, he must have statutory standing. To have standing under RESPA, he must have been charged for the HWC. Despite having intentionally structured and closed the transaction so that the seller was charged and paid for the HWC, Preston now asks the Court to confer upon him Article III standing by holding that the transactional structure of his choosing is fiction and a fictional structure, which Preston calls "economic reality," is fact. But Preston's effort to graft an "economic reality" onto Article III runs afoul of the "legal reality" of the law and the undisputed facts.

Third, Preston argues the Ninth Circuit's recent decision in *Edwards v. First American Corporation*, 610 F.3d 514 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 3022, 180 L. Ed. 2d 843 (2011), is controlling and frees him from having to establish standing by showing actual injury. But, in that case, it was undisputed that Edwards was charged for the settlement service at issue. *Edwards* did not hold, as Preston wrongly implies, that a person like Preston, who neither paid nor was charged for a disputed fee, has standing under Article III or RESPA.

Finally, Preston alleges he has standing under California law to file a UCL action, but in federal court a plaintiff must show Article III standing, whether or not there would be standing in state court. *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004). Since Preston cannot establish Article III standing, his argument is fatally flawed.

Without standing there is no "case or controversy" over which this Court has subject-matter jurisdiction. As a result, the Court must grant summary judgment in favor of FNHW and dismiss Preston's action without leave to amend.

## LAW AND ARGUMENT

### I. PRESTON'S EVIDENCE FAILS TO ESTABLISH ARTICLE III OR STATUTORY STANDING.

To have Article III standing, Preston must show "a distinct and palpable injury to himself[.]" *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1973). Even when a plaintiff sues under a statute, that requirement "remains[.]" *Id*. None of Preston's proffered evidence shows an actionable injury.

### A. Hard Evidence and Black-Letter Law Conclusively Refute Preston's Claims About When Payment for the HWC Was Sent.

The escrow officer, Preston asserts, sent payment for the HWC *before* the close of escrow and thus before title to those funds passed to seller. [Opp. 7-8.] Preston's "evidence" comes from his own declaration and Lenocker's testimony. But neither bears out Preston's argument nor shores up his lack of proof.

Lenocker's off-the-cuff testimony about a legal principle fails to create a disputed fact issue.  At deposition, Lenocker guessed that "proceeds in the escrow account did not become Tomassini's property until after the close of escrow… when [the] property is recorded." [Opp. 7.]  But in California, money deposited into escrow by the buyer becomes the seller's property *when the escrow conditions are satisfied*.  *See Hagge v. Drew*, 27 Cal. 3d 368 (1945); *Andover Land Co. v. Hoffman*, 264 Cal. App. 2d 87, 89 (1968); 10 CAL. JUR. *Escrows* § 1 ("The term 'close' of the escrow is used in relation to a situation when the escrow conditions have been performed by all the parties concerned, so that in a sales transaction, for instance, the escrow holder is bound to deliver the deed to the buyer and the purchase money to the seller.").  Under these applicable legal principles, the HWC was paid at closing from the seller's funds.  Lenocker was simply wrong about the law, and his testimony cannot trump state jurisprudence or create a genuine dispute of fact.  "[A] conclusion of law…does not, by itself, create a genuine issue of material fact [because]…a legal conclusion is not a factual statement." *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010).

The only other "evidence" that Preston submits on this point is his declaration, which lacks foundation.  "At closing," Preston says, "the escrow agent authorized a $360.00 payment" for the HWC. [Preston Decl. ¶ 11.]  Preston never explains how he is "competent to testify" about the matter, so his statement cannot

create a fact issue.  FED. R. CIV. P. 56(c)(4); *see also* C.D. CAL. L.R. 7-7.  Even if his speculation were correct, "*at* closing" is not "*before* the close of escrow."

Moreover, the documents from the transaction refute Preston's statement.  For example, the purchase agreement and the HUD-1 statement clearly show that Tomassini was charged for the HWC.  [SUF ¶¶ 4-5, 7.]  Under the terms of the sale, Tomassini had to arrange for and "pay the cost" of the HWC, and indeed that amount was listed on HUD-1 as one of the "settlement charges to seller[.]"  [*Id.*; *see id.* at Exh. 6 (HUD-1) at lns. 502, 1304, 1400.]

The written escrow instructions, which Preston himself signed, expressly directed the escrow officer "to pay for [the HWC] at the close of escrow from proceeds due the Seller herein in an amount not to exceed $395[.]"  [FNHW's Obj. to Pl's Evidence, ¶¶ 26, 32, 34.]  The deed itself shows recording at 8:00 a.m. on March 31, 2011. [*See id.*]  The check shows it was paid from seller's proceeds.  [SUF ¶ 17.]  The HUD-1 that Preston signed shows Tomassini was charged for the HWC and he was not.  [SUF ¶ 7.]  In short, Preston's unsupported declaration is completely eviscerated by documentary proof.

Also, Preston's claim—that the cost of the HWC would be paid "out of the funds that would be deposited into escrow by [him] and [his] lender" [Preston Decl. ¶ 8]—contradicts the terms of the purchase agreement, which Preston affirms in paragraph four of his declaration.  The agreement itself contains a

FNHW'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
6

4697598

merger clause, which prohibits attempts to vary its written terms. [Preston Decl., at Ex. 1 at ¶ 28.] Preston's statement is, thus, contradictory to his own testimony and the purchase agreement and cannot create a *genuine* fact issue because no juror could reasonably rely on it. *See, e.g.*, *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993).

**B.     Preston's After-the-Fact Mental Professions Cannot Create an Actionable Injury for Purposes of Standing.**

Preston tells the Court he "could have" structured the transaction differently so that he would have paid for the HWC, in return for a lower price, or he could have paid for the contract "with cash." [Opp. 7-8.] What Preston *could have* done is completely irrelevant. His standing must be based on what happened, not his private musings about what could have been. If Preston wanted to be charged for the contract and then finance that cost, he could have structured the transaction so that he was charged and then it would appear in the column of fees "Paid from Borrower's Funds at Settlement." [SUF ¶ 7.] But he evidently did not want to be charged for the HWC, finance it, or pay cash for it, so he demanded that Tomassini be charged and pay for it, and she agreed.

What *could have* happened is merely obfuscation. Preston thus fails "to make a sufficient showing" on the "essential element" of standing. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

FNHW'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

7

4697598

### C. No Genuine Disputes of Material Fact Exist About Whether Tomassini Paid for the Home-Warranty Contract.

Preston argues that, if his legal theory about "economic reality" falls flat, then the evidence about who paid for the HWC is "in dispute." [Opp. 12.] But the facts themselves are not in dispute; rather, it is the legal implication of those facts the parties disagree over. That makes summary judgment appropriate.

Preston devotes much of his opposition to attacking Ryan Lenocker's declaration and his credibility. To do so, Preston sets up false arguments and misleading predicates. For example, Lenocker supposedly signed his declaration knowing that it was "incorrect" or "misleading[.]" [Opp. 13.] But the full context of the quote shows that Lenocker edited his declaration to *remove* inaccuracies, not endorse them. [*Id*.] Preston argues doggedly about supposedly false statements about who did what. For example, "the escrow agent, not Tomassini, authorized the $360 payment" and Tomassini did not choose FNHW, rather Lenocker did. [*Id*. at 14.] These are pedestrian efforts to obscure the law of agency. In these instances, the escrow agent acted on behalf of Tomassini in sending the check, and Lenocker acted on Tomassini's behalf in choosing FNHW. Preston's ploy is to remove the agency aspect of the situation and claim that the statements were false. He admits that credibility is irrelevant. [Opp. 15.]

## II. PRESTON CANNOT CHANGE LEGAL REALITY BASED ON HIS THEORY OF "ECONOMIC REALITY."

Preston glosses over the legal import of his purchase agreement and the other transactional documents, admitting only that they "ostensibly" required the seller to pay for the contract. [Opp. 8.] That contractual requirement, he says, is "pure fiction" and contrary to the "economic reality" of the sale. [*Id.* at 6.] But the reality of the sale is not subject to Preston's after-the-fact effort to recast it. Again, Preston intentionally structured his transaction so that Tomassini would bear the cost of the HWC from her proceeds.

Preston's effort to graft an "economic reality" standard onto the standing requirement in RESPA (that a plaintiff must have been charged for the settlement service) improperly seeks to stretch that phrase far beyond the context of its source, *Barbosa v. Target Mortgage Corp.*, 968 F. Supp. 1548, 1556 (S.D. Fla. 1997), and would yield a rule that would conflict with decisional authority in this state. *See Carias v. Lenox Fin. Mortgage Corp.*, No. 07-83 SC, 2008 WL 397339, at *3 (N.D. Cal. Feb. 8, 2008). The narrow rule of *Barbosa* and cases like it (including *McWhorter v. Ford Consumer Fin. Co., Inc.*, 33 F. Supp. 2d 1059 (N.D. Ga. 1997)), is that a mortgage broker's hidden fee, imbedded within an inflated interest rate paid by the borrower, results in the borrower being charged by her mortgage broker in a manner sufficient to create standing under RESPA. Stretching that narrow rule to illogical extremes is the slippery slope rejected

FNHW'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
9

4697598

by District Judge Samuel Conti in *Carias*.

Preston's claim that courts "consistently" find standing where home buyers "directly or indirectly" pay a settlement fee [Opp. 1.] ignores *Carias* and improperly relies exclusively on *Bradford v. WR Starkey Mortgage, LLP*, No. 2:06-cv-86, 2008 WL 4501950, at *2 (N.D. Ga. Feb. 22, 2008).[1] But, in *Bradford*, where the seller agreed to and actually paid $5,000 for closing costs, the critical fact supporting a "sufficient injury" for Article III standing was that the RESPA plaintiff was "unquestionably 'charged'" at closing for the settlement services in question (wire and tax service fees). *Id.* at *2.[2] In dicta, *Bradford* went on to say that even if the "charge" to the plaintiff were not enough for Article III standing, the fact that he could have used the amount of those fees toward other costs would constitute sufficient injury. *See id.* at *2 n.4.

In this case, it is undisputed that the seller, not Preston, was charged and paid $360 for the HWC at closing. Pursuant to the purchase agreement requiring seller to pay for HWC "up to $395," it is clear that the seller, not Preston, is the

---

[1] Preston attempts to distinguish *Carias* with an irrelevant misrepresentation that the plaintiff in that case was not a party to the underlying home loan transaction. [Opp. 18.] Like the other two cases that Plaintiff seeks to distinguish on that basis, *Clingman* and *Bassett*, the point of those citations was RESPA's requirement that the plaintiff be charged. In all of those cases, like in *Bradford,* a finding that the plaintiff was charged for the settlement service is the threshold requirement.

[2] Preston sinks to new lows in arguing that *Bradford* held that "under RESPA, so long as there is a violation, a home buyer is charged the fee resulting from the violation regardless of who pays for it." [Opp. 18.] *Bradford* says nothing of the sort, and that sort of disingenuous argument should be sanctioned.

only party who could claim a loss from the alleged kickback.  Therefore, *Bradford* provides no support for Preston's argument.

### III.   *EDWARDS* DOES NOT CREATE STANDING FOR PRESTON.

Preston's reliance on *Edwards* is misplaced.  [Opp. 16.]  In that case, there was no question that the plaintiff was charged for at least part of the title insurance policy at issue.  *See Edwards*, 610 F.3d at 516 (noting that HUD-1 statement showed that buyer "would pay $455.43 and the seller would pay $273.42 for title insurance").  Rather, the question before the court was whether RESPA contains "a private right of action without requiring an overcharge allegation."  *Id.* at 518.  *Edwards* did not hold, as Preston wrongly implies, that a person who neither paid nor was charged for a disputed fee has standing.  A plaintiff lacks standing under RESPA if that person did not purchase a settlement service that was "involved in" a RESPA violation.  *Blaylock v. First Am. Title Ins. Co.*, No. C06-1667, 2008 WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) (quoting 12 U.S.C. § 2607(d)).

Finally, Preston's claim that "[a]ccording to FNHW, no one has standing to sue for the RESPA violation that took place in Mr. Preston's transaction" is ludicrous.  [Opp. 19.]  As FNHW stated in twice in its Motion, Tomassini, as the person charged for the HWC, would have standing to sue FNHW assuming a "kickback" was involved.  [*See* Doc. No. 58-1 at 9, 15.]  None was.

### IV. PRESTON'S UCL CLAIMS ALSO FAIL FOR LACK OF STANDING, AS DO HIS CLAIMS FOR THE REMEDIES OF INJUNCTIVE AND DECLARATORY RELIEF.

Preston alleges that he has standing under California law to file a UCL action. But in federal court a plaintiff must show Article III standing, whether or not that person would have standing in a state court.[3] *See Hangarter*, 373 F.3d at 1022. Since Preston lacks Article-III standing, he cannot bring a UCL claim in Federal Court, even if he would otherwise have "statutory standing . . . in state court[.]" *Stanford v. Home Depot USA, Inc.*, 358 Fed. Appx. 816, 819 (9th Cir. 2009). Nor can Preston obtain the remedies of injunctive or declaratory relief if he lacks standing, which is "necessary for any party to seek relief from a federal court[.]" *Colyer v. Smith*, 50 F. Supp. 2d 966, 968 (C.D. Cal. 1999) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### CONCLUSION

Preston's lack of truth and his "[t]ransparent prevarication[,]" *Roddenberry*, 44 Cal. App. 4th at 654, that he used to access to this Court should not be rewarded. Justice requires dismissal of his claims against FNHW, with prejudice, because he has no standing and this Court is without subject-matter jurisdiction.

---

[3] Preston correctly points out that UCL standing requires that the plaintiff have "suffered injury in fact" and "loss of money or property as a result of the alleged misconduct[.]" [Opp. 19-20.] But he incorrectly argues that he meets that threshold. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 324-25 (Cal. 2009). The bottom line, under both standards, is that since Preston did not purchase anything from any defendant, he could not have been injured by paying an inflated price.

| | | |
|---|---|---|
| 1 | Date: June 4, 2012 | */s/ Michael J. Gleason* |
| 2 | | Michael J. Gleason SBN 279434 |
| | | *mgleason@hahnlaw.com* |
| 3 | | HAHN LOESER & PARKS, LLP |
| | | One America Plaza |
| 4 | | 600 West Broadway, Suite 1500 |
| 5 | | San Diego, California 92101 |
| | | Telephone: 216.810.4300 |
| 6 | | Facsimile: 619.810.4301 |

Steven A. Goldfarb (admitted *pro hac vice*)
*sagoldfarb@hahnlaw.com*
Derek E. Diaz (admitted *pro hac vice*)
*ddiaz@hahnlaw.com*
HAHN LOESER & PARKS, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: 216.621.0150
Facsimile: 216.241.2824

Mark E. Schiffman, SBN 62654
*Mark.Schiffman@fnf.com*
One America Plaza
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 216.810.4300
Facsimile: 619.810.4301

James A. Moss, SBN 84441
*James.Moss@fnf.com*
FIDELITY NATIONAL LAW GROUP
915 Wilshire Boulevard, Suite 2100
Los Angeles, California 90017
Telephone: (213)438-4418
Facsimile: (213) 438-4417

Attorneys for Defendants
Fidelity National Financial, Inc.; Fidelity National Home Warranty Co.; Fidelity National Title Insurance Co.; Lawyers Title Co.; Commonwealth Land Title Co.; Ticor Company of California; and Chicago Title Co.

FNHW'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

13

4697598

# CERTIFICATE OF SERVICE

I certify that on June 4, 2012, a copy of the foregoing were served on the following counsel of record via the Court's CM/ECF filing system:

Edward D. Chapin, Esq.
Francis A. Bottini, Esq.
Jill M. Sullivan, Esq.
Jennifer M. Chapman, Esq.
CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
550 West "C" Street, Suite 2000
San Diego, California 92101
Telephone: 619.241.4810
Facsimile: 619.955.5318

Blair A. Nicholas, Esq.
Benjamin Galdston, Esq.
David Kaplan, Esq.
BERNSTEIN, LITOWITZ, BERGER & GROSSMAN LLP
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: 858.793.0070
Facsimile: 858.793.0323

Attorneys for Plaintiff and the Putative Classes

Date: June 4, 2012            /s/ Michael J. Gleason
                              Michael J. Gleason,
                              Attorney for Defendants