Michael J. Gleason SBN 279434
mgleason@hahnlaw.com
HAHN LOESER & PARKS, LLP
One America Plaza
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 216.810.4300
Facsimile: 619.810.4301

Steven A. Goldfarb (admitted *pro hac vice*)
sagoldfarb@hahnlaw.com
HAHN LOESER & PARKS, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: 216.621.0150
Facsimile: 216.241.2824

[Additional counsel listed on signature page]

Attorneys for Defendants Fidelity National Financial, Inc.; Fidelity National Home Warranty Company; Fidelity National Title Insurance Company; Lawyers Title Company; Chicago Title Company; Commonwealth Land Title Company; and Ticor Title Company of California

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| PAUL PRESTON, on Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation, et al.<br>          Defendants. | Case No. CV11-09746 DSF (AGRx)<br><br>JUDGE DALE S. FISCHER<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date: June 18, 2012<br>Hearing Time: 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................. 1

LAW AND ARGUMENT ...................................................................................... 2

    I.    PRESTON'S NEBULOUS ALLEGATIONS OF A "SCHEME" IN WHICH OTHER PEOPLE MAY HAVE BEEN INJURED DOES NOT CONFER STANDING ON HIM. ..................................... 3

        A.    Preston's General and Unsupported Allegations Do Not Sustain Standing. .................................................................... 3

        B.    Preston Has Not Adequately Pled Alternative Liability Theories. ............................................................................. 5

    II.    PRESTON HAS NOT ESTABLISHED STANDING UNDER RESPA. ..................................................................................... 7

    III.    PRESTON FAILS TO ESTABLISH STANDING UNDER THE UCL. ........................................................................................ 9

    IV.    PRESTON HAS NOT ESTABLISHED STANDING UNDER §12760. ..................................................................................... 10

        A.    The Non-Home-Warranty Defendants Are Not Home-Warranty Companies As Defined By the Applicable Statute. ........................................................................................ 10

        B.    Preston Cannot Allege That Any Non-Home-Warranty Defendant Forced Him to Purchase a Home-Warranty Contract. ..................................................................................... 10

    V.    BECAUSE HE LACKS STANDING, PRESTON CANNOT OBTAIN LEAVE TO AMEND HIS COMPLAINT. ....................... 11

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 2

*Automotriz del Golfo de Calif. S.A. de C. V. v. Resnick*,
  47 Cal. 2d 792 (1957) ...................................................................................... 6

*Barbosa v. Target Mortgage Corp.*,
  968 F. Supp. 1548 (S.D. Fla. 1997) .................................................................. 8

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................ 2

*Blaylock v. First Am. Title Ins. Co.*,
  No. C06-1667RAJ, 2008 WL 8741396 (W.D. Wash. Nov. 7, 2008) ................ 7

*Bradford v. WR Starkey Mortgage, LLP*,
  No. 2:06-cv-86, 2008 WL 4501950 (N.D. Ga. Feb. 22, 2008) ..................... 8, 9

*Carias v. Lenox Fin. Mortgage Corp.*,
  No. 07-cv-0083 SC, 2008 WL 397339 (N.D. Cal. Feb. 8, 2008) ................. 8, 9

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F.Supp. 2d 939 (S.D. Cal. 2007) ...................................................... 6, 7, 11

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 115 (9th Cir. 2010). ............................................................................ 3

*Edwards v. First Am. Corp.*,
  610 F.3d 514 (9th Cir. 2010) ............................................................................ 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................ 11

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ............................................................................ 9

*In re Toyota Motor Corp.*,
  790 F.Supp. 1152 (C.D. Cal. 2011) ................................................................ 10

*Karim-Panahi v. Los Angeles Police Dept.*,
  839 F.2d 621 (9th Cir. 1988) ............................................................................ 6

*La Mar v. H&B Novelty & Loan, Co.*,
   489 F.2d 461 (9th Cir. 1973) ............................................................................ 5

*Lawyers Title Insurance Corporation v. Dearborn Title Corporation*,
   22 F. Supp. 2d 820 (N.D. Ill. 1998) .................................................................. 8

*Lee v. Am. Nat'l Ins. Co.*,
   260 F.3d 997 (9th Cir. 2001) ............................................................................ 4

*McCarn v. HSBC, Inc.*,
   No. 12-CV-00375, 2012 U.S. Dist. LEXIS 74085 (E.D. Cal. May 29, 2012) ................................................................................................................ 6

*McWhorter v. Ford Consumer Finance Co, Inc.*,
   33 F. Supp. 2d 1059 (N.D. Ga. 1997) .............................................................. 8

*Perez v. State Farm Mut. Auto. Ins. Co.*,
   No. C 06-01962 JW, 2011 WL 5833636 (N.D. Cal. Nov. 15, 2011) ................ 4

*Phelps v. Stostad*,
   16 Cal. 4th 23, 939 P.2d 760 (1997) .............................................................. 10

*Pradhan v. Citibank, N.A.*,
   No. 10-CV-03245-LHK, 2011 WL 90235 (N.D. Cal. Jan. 10, 2011) ............... 4

*Wellpoint Out-of-Network "UCR" Rates Litig.*,
   No. MDL 09-2074 PSG (FFMx), 2011 U.S. Dist. LEXIS 89512 (C.D. Cal. Aug. 11, 2011) ............................................................................................ 4

### STATUTES AND OTHER AUTHORITIES

CAL. INS. CODE § 12740 ........................................................................................ 10

CAL. INS. CODE § 12745 ........................................................................................ 10

CAL. INS. CODE § 12760 ................................................................................... 2, 10

CAL. INS. CODE § 17200 .......................................................................................... 2

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, & MARY KAY KANE, FED. PRAC. & PROC. (3d ed. Supp. 2012) ................................................................. 2

# INTRODUCTION

The question before the Court is not whether the Non-Home-Warranty Defendants[1] could be liable to someone for something. Yet that is the recurring theme in Preston's diatribe, in which he accuses these companies of taking part in a nefarious kickback scheme. Instead, *the simple issue before this Court is whether Preston has standing to confer Article III jurisdiction on this tribunal* and to seek to hold these defendants liable for that purported scheme. It is clear that this motion must be granted if Fidelity National Home Warranty Company's ("FNHW") summary-judgment motion is granted. [*See* Doc. No. 58.] After all, Preston's claims against the Non-Home-Warranty Defendants depend on his allegations against FNHW. Regardless the outcome of FNHW's motion, this motion must be granted, for the following reasons.

First, Preston does not deny the complete lack of business relationship between the Non-Home Warranty Defendants and himself. Nor does he deny that those companies never charged him—and he never paid—for any service from them. Rather, he invokes legal theories and purported facts that bear no relation to the allegations in his Complaint, in a smoke-and-mirror effort designed to rescue a fatally infirm case in which subject-matter jurisdiction never existed.

Second, Preston cavalierly invokes legal principles like agency, juridical link, and alter ego, but he makes no credible effort to explain how his pleading allegations support those theories. His arguments about his claims under RESPA,

---

[1] The Non-Home-Warranty Defendants are Fidelity National Financial, Inc., Fidelity National Title Insurance Company, Lawyers Title Company, Commonwealth Land Title Company, Ticor Title Company of California, and Chicago Title Company. Citing two falsities, Preston's Opposition calls them the "Affiliated Defendants." [Opp. 1. at nn. 1, 3.] Preston alleges that those companies paid kickbacks for home-warranty contracts and acted as an agent for Fidelity National Home Warranty Company. Falsity aside, Preston does not allege that either of those things occurred in *his* transaction.

§17200, and § 17260 are similarly adrift. Without allegations connecting the Non-Home-Warranty Defendants to his transaction, he has no standing to sue them. And there are no allegations that could support a finding that the Non-Home-Warranty Defendants are somehow home-warranty companies or that any of them "required" Preston to buy a home-warranty contract ("HWC"). Finally, Preston does not oppose the Non-Home-Warranty Defendants' arguments regarding his lack of standing as to declaratory and injunctive relief. So those issues are conceded.

Thus, it is time to end Preston's blatant shakedown attempt against the Non-Home-Warranty Defendants. He portrays himself as a roving vigilante, heroically vindicating the rights of allegedly injured people. But Preston lacks a sufficient constitutional nexus to do that, at least against these defendants. No argument, no matter how high-minded, can change that basic flaw. As a result, Preston's claims against the Non-Home-Warranty Defendants should be dismissed with prejudice.

## LAW AND ARGUMENT

Preston implicitly asks this Court to ignore the plausibility standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). For he cites no post-*Twombly* decision that embraces the "no set of facts" standard that he advocates. [Opp. 5.] Although he points to an outdated treatise that discussed that standard, he fails to mention that the current version of that treatise confirms that the Supreme Court "retired" that test in *Iqbal* and *Twombly*. 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, & MARY KAY KANE, FED. PRAC. & PROC. § 1368 (3d ed. Supp. 2012).

Applying the correct—not defunct— standard reveals that Preston has presented nothing more than a threadbare recitation of facts and that he lacks Article III standing to assert his claims.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS
2
4711237

I. **PRESTON'S NEBULOUS ALLEGATIONS OF A "SCHEME" IN WHICH OTHER PEOPLE MAY HAVE BEEN INJURED DOES NOT CONFER STANDING ON HIM.**

"Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 115, 1122 (9th Cir. 2010). Preston tacitly concedes that he never had any business transactions with the Non-Home-Warranty Defendants. That glaring defect all but disqualifies him as the proper party to sue.

To escape dismissal, Preston tries desperately to conjure a link between his purported injury and the Non-Home-Warranty Defendants. That link, he says, is a purported scheme involving TransactionPoint and sub-license agreements between each Defendant and agents or brokers. [Opp. 6-7.]

But one would search the Complaint in vain for an explanation about how a Non-Home-Warranty Defendant's sub-license agreement with a broker or agent impacted Preston. That rings especially true considering that Preston does not allege that his transaction involved the use of TransactionPoint. Entirely absent from his allegations is any claim that the Non-Home-Warranty Defendants did anything to impact his HWC. His inability to make that basic allegation dooms his effort to achieve standing against them.

**A. Preston's General and Unsupported Allegations Do Not Sustain Standing.**

Preston speaks loosely of "collective and concerted marketing and sales practices" among the defendants. [Opp. 7.] But, in his Complaint, there are absolutely no factual allegations that any Non-Home-Warranty Defendant marketed or sold the HWC in his transaction. Preston seeks to confuse the issue with sweeping generalizations, suggesting the Non-Home-Warranty Defendants marketed or sold products *other than HWCs*. But no pleading allegations tie that notion to Preston's transaction.

In order for Preston to have standing to sue them, the Non-Home-Warranty Defendants must have been involved in his transaction. Because he "did not buy any [insurance] policy from [them,]" he "lacks Article III standing to bring a case" against them. *Perez v. State Farm Mut. Auto. Ins. Co.,* No. C 06-01962 JW, 2011 WL 5833636, at *2 (N.D. Cal. Nov. 15, 2011) (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001)).

Preston contends that the Complaint "compel[s] a conclusion" that the Non-Home-Warranty Defendants participated in a scheme that inflated prices. [Opp. 8.] But no factual allegations point to such a conclusion. Preston erroneously relies on *Pradhan v. Citibank, N.A.*, No. 10-CV-03245-LHK, 2011 WL 90235, at *4 (N.D. Cal. Jan. 10, 2011), where the court found that the operative complaint "outline[d] several interactions *between Defendants and Plaintiffs that Plaintiffs' claim caused them harm.*" *Id.* (emphasis added). Here, the Complaint contains no allegations of interaction between Preston and the Non-Home-Warranty Defendants.[2] Even if the Court could consider the chart Preston filed with his Opposition (it cannot), that does not establish any relationship between any Defendants to sell each other's products, or more importantly that the Non-Home-Warranty Defendants sold Preston the HWC.

Despite Preston's effort to distinguish *Lee*, he succeeds only in proving that case's similarity to this one. In *Lee*, no connection existed between the defendant's conduct and the plaintiff's injury—just as with Preston's transaction. Additionally, Preston claims that *Lee* focuses on whether the plaintiff was a proper party, not whether the right defendant was named. But there is no difference between the fact that the *Lee* plaintiff did not purchase an insurance policy from the named

---

[2] Preston's reliance on *Wellpoint Out-of-Network "UCR" Rates Litig.,* No. MDL 09-2074 PSG (FFMx), 2011 U.S. Dist. LEXIS 89512, at *34 (C.D. Cal. Aug. 11, 2011) is also without merit. [Opp. 9.] There, the court declined to dismiss because the plaintiffs "ha[d] pleaded actual injuries[], caused by Defendants[,]" which contrasts with Preston's allegations here. 2011 U.S. Dist. LEXIS 89512, at *34.

defendant and that Preston did not purchase a settlement service from any of the Non-Home-Warranty Defendants.

Preston claims that the Non-Home-Warranty Defendants' answer to paragraph 43 of the Complaint is an admission that "they worked together to market and sell real estate settlement services." [Opp. 8.] But that is not what the Complaint alleges—rather it alleges only that the Defendants entered into sub-license agreements with real estate brokers and agents. [*Id*., at 7.] There is nothing collusive about each individual Defendant entering agreements with non-defendant agents or brokers. Indeed, there are no allegations that the Non-Home-Warranty Defendants entered into any agreement with each other or FNHW.

### B. Preston Has Not Adequately Pled Alternative Liability Theories.

Improperly relying on the extinct "any set of facts" standard, Preston asserts that he can establish facts to prove liability under theories of agency, alter ego, or juridical link. But tellingly, he does not actually offer factual allegations to buttress those theories.[3]

Preston boldly states that, to invoke agent liability, he need not actually use the word "agency" in his Complaint. [Opp. 10.] Then he claims without citation that "his allegations demonstrate that the [Non-Home-Warranty] Defendants and FNHW acted as each other's agents in the underlying scheme . . ." [*Id*. at 10-11.] Preston does not, and indeed cannot, cite to his Complaint because in that document there are no allegations that even approximate a principal-agent relationship between any Non-Home-Warranty Defendant and FNHW. Therefore

---

[3] Preston's only reference to juridical link is a citation to the seminal case of *La Mar v. H&B Novelty & Loan, Co.,* 489 F.2d 461, 470 (9th Cir. 1973). This Court need not speculate about juridical link because Preston does not even bother to describe the standards for that doctrine, the situations in which it could exist, its disfavored status, or why it was *not* applicable in *La Mar*. In fact, in that case, the court ultimately dismissed the complaint due to lack of standing.

each of Preston's cases is distinguishable on that fact alone.  In each instance, the plaintiff alleged facts sufficient to establish an agency relationship.

Nor does Preston do an adequate job of explaining conspiracy or alter ego. Conspiracy must be specifically pled, and Preston did not even come close to meeting that burden.  *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.").  Moreover, in *McCarn v. HSBC, Inc.*, No. 12-CV-00375 LJO SKO, 2012 U.S. Dist. LEXIS 74085, at *22 (E.D. Cal. May 29, 2012) (no Westlaw version available), the court dismissed a class action for lack of standing where the named plaintiffs had alleged standing in a purported scheme concerning parallel agreements.  The court found that a "rimless" conspiracy—one that lacked an agreement to act in concert or did not depend on all parties' participation—was an insufficient basis to establish standing.  *Id.*  Here, Preston's allegations offer no more than those of the plaintiff in *McCarn*.  In this case, there are no allegations that any Non-Home-Warranty Defendant acted in concert with FNHW to sell the HWC or that a purported conspiracy required the participation of each of these defendants.  The Court should follow *McCarn* and dismiss for lack of standing.

Preston's sole case involving alter-ego does not involve standing or even a motion on the pleadings.  Instead, *Automotriz del Golfo de Calif. S.A. de C. V. v. Resnick*, 47 Cal. 2d 792, 796 (1957), teaches that the alter-ego doctrine may be applied where the corporate formalities of stock and capitalization have been ignored.  Preston did not and cannot make those allegations here.

Additionally, Preston's attempt to factually distinguish *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp. 2d 939 (S.D. Cal. 2007) is unavailing.  Preston states that his complaint "specifies the roles the [Non-Home-Warranty] Defendants played in the underlying illegal scheme." [Opp. 11.]  But a review of the Complaint does

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS
6
4711237

not support that statement. Rather, just as in *Cattie*, Preston made allegations about the various defendants, but did "not adequately allege [one] had anything to do with the wrongdoing complained of . . ." *Id.* at 945. Without establishing that each and every one of the Non-Home-Warranty Defendants were involved in the sale and purchase of Preston's HWC, Preston's claims must be dismissed.[4]

## II. PRESTON HAS NOT ESTABLISHED STANDING UNDER RESPA.

In his futile attempt to establish RESPA standing, Preston argues that the Non-Home-Warranty Defendants participated in an amorphous "kickback scheme" and "benefitted from their illegal practices." [Opp. 11.] But he does not explain how any of them participated in his transaction or how each contributed to or caused his alleged injury. RESPA's plain language establishes that Preston lacks standing to sue the Non-Home-Warranty Defendants. "RESPA allows only persons 'charged for the settlement service involved in the [RESPA] violation' to sue." *Blaylock v. First Am. Title Ins. Co.,* No. C06-1667RAJ, 2008 WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) (dismissing for lack of standing).

*Edwards* does not change that. *See Edwards v. First Am. Corp.,* 610 F.3d 514 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 3022, 180 L. Ed. 2d 843 (2011). In *Edwards*, the plaintiff was charged for at least part of the real-estate settlement service at issue. *Id.* at 516 (noting HUD-1 indicates buyer "would pay $455.43 and the seller would pay $273.42 for title insurance"). The question in *Edwards* concerned whether RESPA permits "a private right of action without requiring an overcharge allegation." *Id.* at 518. But *Edwards* does not hold that a person who was not charged and did not pay a disputed fee may sue under RESPA. Here, not only was Preston not charged for a settlement service by the Non-Home-Warranty Defendants, he never bought *any* service from *any of them*.

---

[4] Additionally, FNHW has moved for summary judgment because Preston was not charged and did not pay for the HWC from FNHW. If FNHW's Motion is granted, Preston can state no claim against any Non-Home-Warranty Company.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS
7

4711237

Preston claims that "RESPA liability attaches" without regard to whether the consumer is directly charged. [Opp. 12.] Preston tries to frame the issue as whether the charge for settlement fees was "direct" or "indirect," but none of the cases he cites speak to a situation in which there is *no* settlement service provided by the defendant. Preston's citation to *McWhorter v. Ford Consumer Finance Co, Inc.*, 33 F. Supp. 2d 1059, 1067 (N.D. Ga. 1997) does not help his argument because the plaintiff had standing to sue the lender *in the plaintiff's transaction* that allegedly provided a kickback to *the plaintiff's broker in the plaintiff's transaction*. Likewise, in *Barbosa v. Target Mortgage Corp.*, 968 F. Supp. 1548 (S.D. Fla. 1997), RESPA standing existed because a mortgage broker's hidden fee was imbedded in an inflated interest rate paid by the borrower, which resulted in the borrower being charged by the mortgage broker.

The *Bradford* case follows those same lines because the defendant in that case provided settlement services to the plaintiff. There, the seller agreed to and actually paid $5,000 for closing costs. The critical fact supporting a "sufficient injury" for Article III standing was that the plaintiff was "unquestionably 'charged'" at closing for the services in question (wire and tax service fees). *Bradford v. WR Starkey Mortgage, LLP*, No. 2:06-cv-86, 2008 WL 4501950, at *2 (N.D. Ga. Feb. 22, 2008). The same is true of *Lawyers Title Insurance Corporation v. Dearborn Title Corporation,* 22 F. Supp. 2d 820, 822 (N.D. Ill. 1998), because the plaintiff did pay the defendant for settlement services.

By contrast, here Preston contends that he has standing to sue one company (Fidelity National Financial, Inc.) that does not even offer or sell any *settlement services* and five title companies, even though he does not allege that any of them provided settlement services in his transaction or that they made or received a kickback *in his transaction*. The *Carias* court rejected stretching to illogical extremes the narrow rule about direct and indirect fees, which is precisely what

Preston demands here.[5] *See Carias v. Lenox Fin. Mortgage Corp.,* No. 07-cv-0083 SC, 2008 WL 397339, at *3 (N.D. Cal. Feb. 8, 2008).

Simply put, Preston has failed to allege that any of the Non-Home-Warranty Defendants provided him any settlement service in any RESPA-related transaction. Without that, the cases he cites concerning indirect payments are inapposite.

### III. PRESTON FAILS TO ESTABLISH STANDING UNDER THE UCL.

Preston's attempt to establish standing under the UCL is based on the same faulty allegations that do not connect him to any of the Non-Home-Warranty Defendants. Preston correctly points out that UCL standing requires him to have suffered a "loss of money or property as a result of the alleged misconduct[.]" [Opp. 14.] But he incorrectly argues that he meets that threshold.

In federal court, a plaintiff must show Article III standing, whether or not standing would exist in state court. *See, e.g., Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1022 (9th Cir. 2004). Again, Preston did not suffer an injury in fact, and he did not lose money or property as a result of the alleged misconduct, because he did not pay for the HWC. But even accepting his pleading allegations as true, he did not suffer any injury in fact as a result of any conduct on the part of the Non-Home-Warranty Defendants and therefore cannot sue them under the UCL.

---

[5] Preston attempts to distinguish *Carias* by claiming that the plaintiff there was not a party to the underlying home loan transaction. [Opp. 13.] That distinction is not only false (Carias was the home owner), it is beside the point. Like the other two cases that Preston tries to distinguish on that basis, *Clingman* and *Bassett,* the point of those citations was to underscore RESPA's requirement that the plaintiff be charged. In all three cases, like in *Bradford,* a finding that the plaintiff was charged for the settlement service was the threshold issue.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS
9

4711237

## IV. PRESTON HAS NOT ESTABLISHED STANDING UNDER §12760.

### A. The Non-Home-Warranty Defendants Are Not Home-Warranty Companies As Defined By the Applicable Statute.

Preston's threadbare allegation that the Non-Home-Warranty Defendants "acted in concert with and as an agent of FNHW" [Opp. 16] without any specific allegations regarding his own transaction cannot establish standing under §12760. None of his allegations detail how any of the Non-Home-Warranty Defendants were involved in his transaction or what they allegedly did as FNHW's agent.

Preston's interpretation of the California Insurance Code ignores basic tenets of statutory construction and common sense. The plain text of §12760 is expressly limited to home-warranty companies, as defined in the statute. CAL. INS. CODE § 12740(b). Yet Preston asks that Court to ignore this express language, based on notions of "consumer protection" and a vague reference to §12745, which provides no support for considering a non-home-warranty company anything else. If Preston's argument were valid, it would eviscerate established jurisprudence that requires a court to interpret clear and uncertain statutory language "according to its terms." *Phelps v. Stostad*, 16 Cal. 4th 23, 32, 939 P.2d 760, 765 (1997).

### B. Preston Cannot Allege That Any Non-Home-Warranty Defendant Forced Him to Purchase a Home-Warranty Contract.

Alternatively, Preston baldly claims that the Non-Home-Warranty Defendants required him to buy a HWC from FNHW. It defies logic that six separate entities that had no involvement in his transaction could have required him to do anything.

Preston's citation to *In re Toyota Motor Corp.*, 790 F.Supp. 1152, 1162-63 (C.D. Cal. 2011), is completely irrelevant to his argument. In *Toyota*, the court determined that a plaintiff had standing where she alleged that she purchased a vehicle from Toyota and that the value was diminished. Toyota did not challenge

whether she had actually purchased a vehicle from Toyota. This is simply not comparable to Preston's contention that each and every one of the six Non-Home-Warranty Defendants required him to purchase a HWC in conjunction with another insurance policy. In fact, it should be an affront to this Court that Preston would make such an allegation where he has not alleged that he purchased any insurance policy from any of the six Non-Home-Warranty Defendants.

## V. BECAUSE HE LACKS STANDING, PRESTON CANNOT OBTAIN LEAVE TO AMEND HIS COMPLAINT.

Because Preston lacks standing to sue any of the Non-Home-Warranty Defendants and FNHW, the claims against those defendants must be dismissed. Preston contends that the Court should exercise its discretion and permit him leave to amend, but none of his cases dictate that result. In fact, none of Preston's cases consider whether leave to amend should be granted following dismissal for lack of standing. Indeed, one of the cases specifically allowed amendment only because the plaintiff had established a reasonable chance of successfully doing so. *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1053 (9th Cir. 2003). The same cannot be said here.

Preston should be denied leave to amend because he cannot make any colorable argument linking the alleged kickback in his real-estate transaction to any Non-Home-Warranty Defendant. Even in his opposition, he has offered only generalities without any promise of the allegations necessary to support standing.

In *Cattie,* the court dismissed the plaintiff's claims based on lack of standing without leave to amend. The court reasoned that the plaintiff had not shown that the specific defendant "was involved in the alleged wrongdoing against Plaintiff or even the type of activity Plaintiff complains of . . ." *Cattie v. Wal-mart Stores, Inc.*, 504 F.Supp. 2d 939, 946 (S.D. Cal. 2007). Here, Preston has not alleged any involvement by the Non-Home-Warranty Defendants in his transaction. So any

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS
11

4711237

attempt to amend would fail to provide the substance necessary to defeat a subsequent a motion to dismiss or motion for judgment on the pleadings. Therefore, Preston should not be granted leave to amend.

## CONCLUSION

Preston lacks standing to sue the Non-Home-Warranty Defendants because he cannot allege that any of them provided services to him. His inability to advance alternative liability theories further dooms his efforts. Also, his RESPA and statutory claims suffer from the same inadequacies. The Court should dismiss Preston's claims against the Non-Home-Warranty Defendants with prejudice and deny him an opportunity to amend.

| | | |
|---|---|---|
| 1 | Date: June 5, 2012 | /s/ Michael J. Gleason |
| 2 | | Michael J. Gleason SBN 279434 |
| | | mgleason@hahnlaw.com |
| 3 | | HAHN LOESER & PARKS, LLP |
| 4 | | One America Plaza |
| | | 600 West Broadway, Suite 1500 |
| 5 | | San Diego, California 92101 |
| | | Telephone: 216.810.4300 |
| 6 | | Facsimile: 619.810.4301 |

Steven A. Goldfarb (admitted pro hac vice)
sagoldfarb@hahnlaw.com
Derek E. Diaz (admitted pro hac vice)
ddiaz@hahnlaw.com
HAHN LOESER & PARKS, LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: 216.621.0150
Facsimile: 216.241.2824

Mark E. Schiffman, SBN 62654
Mark.Schiffman@fnf.com
One America Plaza
600 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 216.810.4300
Facsimile: 619.810.4301

James A. Moss, SBN 84441
James.Moss@fnf.com
FIDELITY NATIONAL LAW GROUP
915 Wilshire Boulevard, Suite 2100
Los Angeles, California 90017
Telephone: (213)438-4418
Facsimile: (213) 438-4417

Attorneys for Defendants
Fidelity National Financial, Inc.; Fidelity National Home Warranty Co.; Fidelity National Title Insurance Co.; Lawyers Title Co.; Commonwealth Land Title Co.; Ticor Company of California; and Chicago Title Co.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS
13

4711237

# CERTIFICATE OF SERVICE

I certify that on June 5, 2012, a copy of the foregoing were served on the following counsel of record via the Court's CM/ECF filing system:

Edward D. Chapin, Esq.
Francis A. Bottini, Esq.
Jill M. Sullivan, Esq.
Jennifer M. Chapman, Esq.
CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
550 West "C" Street, Suite 2000
San Diego, California 92101
Telephone: 619.241.4810
Facsimile: 619.955.5318

Blair A. Nicholas, Esq.
Benjamin Galdston, Esq.
David Kaplan, Esq.
BERNSTEIN, LITOWITZ, BERGER & GROSSMAN LLP
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: 858.793.0070
Facsimile: 858.793.0323

Attorneys for Preston and the Putative Classes

Date: June 5, 2012                                /s/ Michael J. Gleason
                                                  Michael J. Gleason,
                                                  Attorney for Defendants